J. CHRISTOPHER JACZKO (149317)
JACZKO LAW GROUP, APC
4401 Eastgate Mall
San Diego, CA 92121
Telephone:   (858) 404-9206
Facsimile:    (858) 225-3500
chris@jaczkolaw.com

MICHAEL C. RICHARDS  (To Be Admitted *Pro Hac Vice*)
EMILY E. HARRIS  (To Be Admitted *Pro Hac Vice*)
DAVIS, BROWN, KOEHN, SHORS & ROBERTS, PC
The Davis Brown Tower
215 10th Street, Suite 1300
Des Moines, IA 50309
Telephone:     (515) 288-2500
Facsimile:      (515) 243-0654

Attorneys for Defendant, Counterclaimant and
Third-Party Plaintiff
TSI HEALTH SCIENCES, INC.

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN STATE NATURAL PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TSI HEALTH SCIENCES, INC., <br><br> Defendant. | No. '13CV0337 JAH KSC <br><br> **ANSWER TO COMPLAINT, COUNTERCLAIM, AND THIRD PARTY COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |
| TSI HEALTH SCIENCES, INC., <br><br> Counterclaimant, <br><br> v. <br><br> GOLDEN STATE NATURAL PRODUCTS, INC., <br><br> Counterclaim-Defendant. | |
| (caption continued) | |

| | |
|---|---|
| 1 | TSI HEALTH SCIENCES, INC., ) |
| 2 | ) |
|   | Third Party Plaintiff, ) |
| 3 | ) |
| 4 | v. ) |
|   | ) |
| 5 | APEX ENERGETICS, INC., ) |
| 6 | ) |
|   | Third Party Defendant. ) |
| 7 | _____) |

TSI (USA) Inc. f/k/a TSI Health Sciences, Inc. (hereafter referred to as "TSI") for its answer to the Plaintiff's Complaint for Declaratory Judgment states as follows:

## **NATURE OF THIS ACTION**

1. Paragraph 1 lacks any allegations warranting a response.

2. TSI lacks sufficient information to comment on the allegations contained in paragraph 2.

3. TSI Health Services, Inc. is now TSI (USA) Inc. TSI admits the remaining allegations of paragraph 3.

## **JURISDICTION AND VENUE**

4. Paragraph 4 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 4.

5. Paragraph 5 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 5.

6. Paragraph 6 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 6.

7. Paragraph 7 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 7.

8. Paragraph 8 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 8.

## GENERAL ALLEGATIONS

9. TSI admits the allegations of paragraph 9.

10. TSI admits the allegations of paragraph 10.

11. TSI admits that a written agreement was formed between GSNP and TSI on June 24, 2009, and denies the remaining allegations of paragraph 11.

12. TSI admits that GSNP bought ATP from TSI, and denies the remaining allegations of paragraph 12.

13. TSI is the exclusive licensee of the '329 Patent. TSI admits the remaining allegations of paragraph 13.

14. TSI lacks sufficient information to comment on the allegations contained in paragraph 14. It is therefore denied.

15. TSI admits the allegations of paragraph 15.

16. Paragraph 16 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 16.

17. Paragraph 17 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 17.

## FIRST CLAIM FOR RELIEF
## (Declaration of Non-Infringement of the '329 Patent)

18. Paragraph 18 lacks any new allegations warranting a response.

19. TSI admits the allegations of paragraph 19.

20. TSI admits the allegations of paragraph 20.

21. TSI denies the allegations of paragraph 21.

22. TSI denies the allegations of paragraph 22.

23. Paragraph 23 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 23.

24. Paragraph 24 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 24.

/ / /

## SECOND CLAIM FOR RELIEF

## (Declaration of Non-Infringement of the '038 Patent)

25. Paragraph 25 lacks any new allegations warranting a response.

26. TSI admits the allegations of paragraph 26.

27. TSI admits the allegations of paragraph 27.

28. TSI denies the allegations of paragraph 28.

29. TSI denies the allegations of paragraph 29.

30. Paragraph 30 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 30.

31. Paragraph 31 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 31.

## THIRD CLAIM FOR RELIEF

## (Declaration that GSNP is Not In Breach of the License Agreement)

32. Paragraph 32 lacks any new allegations warranting a response.

33. TSI admits the allegations of paragraph 33.

34. TSI denies the allegations of paragraph 34.

35. Paragraph 35 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 35.

36. Paragraph 36 contains legal conclusions that do not require a response. To the extent that a response is required, TSI denies the allegations of paragraph 36.

## COUNTERCLAIMS

TSI, for its Counterclaims against Plaintiff GSNP, alleges:

## NATURE OF ACTION

37. This is an action for breach of contract and indirect patent infringement by way of inducement and contributory patent infringement of the TSI-owned and licensed patents, U.S. Patent 7,629,329 issued on December 8, 2009 to Steve S. Lee et al. for "Method for Increasing Muscle Mass and Strength Through Administration of Adenosine Triphosphate," U.S. Patent 7,671,038 entitled "Method of Therapeautic

Treatments Including Human Immunodeficiency Virus (HIV) Disease and Other Conditions in a Human Host by Administering Adenine Nucleotides" (issued on March 2, 2010), and U.S. Patent 6,723,737 for "Methods, Pharmaceutical and Therapeutic Compositions for Administering Adenosine," issued on April 20, 2004. A true and correct copy of U.S. Patent 7,671,038 (the "038 patent") is attached hereto as Exhibit A and is incorporated herein by this reference.

## FIRST COUNTERCLAIM
### (Breach of Contract)

38. GSNP and TSI entered into a License and Supply Agreement ("Agreement") on June 24, 2009, wherein TSI agreed to grant to GSNP a non-exclusive license to certain patents covering uses of ATP in dietary supplements.

39. The Agreement, paragraph 1.2, states that the defined term "Ingredient" "shall include adenosine 5'-triphosphate and adenosine 5'-triphosphate disodium (hereinafter "ATP") that is administered orally as a Dietary Supplement, resulting from the use of an invention described and claimed in at least one claim of the Letters Patent."

40. The Agreement, paragraph 1.1, states that "Letters Patent…shall include United States patents and any and all patents issuing on patent applications enumerated at Appendix A, and any continuations, continuation-in-part, divisions, patents of addition, reissues or extensions of such patents or patent applications that are owned or licensed by TSI and which TSI has the right to grant licenses thereon to [GSNP] during the term of this Agreement."

41. Appendix A of the Agreement enumerates certain Letters Patent as U.S. Patent 6,723,737 to Eliezer Rapaport for "Methods, Pharmaceutical and Therapeutic Compositions for Administering Adenosine," issued on April 20, 2004 (the "'737 patent"); U.S. Patent 5,227,371 to Eliezer Rapaport for "Utilization of Adenine Nucleotides and/or Adenosine and Inorganic Phosphate for Elevation of Liver, Blood and Blood Plasma Adenosine 5'-Triphosphate Concentrations," issued on July 13,

1993 (the "'371 patent"); U.S. Patent 5,049,372 to Eliezer Rapaport for "Anticancer Activities in a Host by Increasing Blood and Plasma Adenosine 5'-Triphosphate (ATP) Levels," issued on September 17, 1991 (the "'372 patent"); and U.S. Patent Application Serial Number 10/162,143, which was later issued as a continuation-in-part on December 8, 2009 as U.S. Patent 7,629,329 to Steve S. Lee et al. for "Method for Increasing Muscle Mass and Strength Through Administration of Adenosine Triphosphate" (the "'329 patent"). True and correct copies of the '737 patent, '371 patent, '372 patent, and '329 patent, are attached hereto as Exhibits "B", "C", "D", and "E", respectively, and are incorporated herein by this reference as though set forth in full. The aforementioned '038 patent together with the '737 patent, '371 patent, '372 patent and '329 patent are collectively referred to hereinbelow as the "TSI Patents".

42. Each of these patents-in-suit relates to the oral administration of ATP to persons in need thereof, for the improvement of musculoskeletal function, the development of muscle mass, and the treatment of obesity and the overweight.

43. The preamble to the Agreement clearly states that "TSI has acquired, developed, licensed and/or otherwise owns all right, title and interest in and to certain technology, inventions, trademarks, and know-how relating to Ingredient […GSNP] desires to market and sell dietary supplements containing Ingredient purchased from TSI. TSI is willing to supply Ingredient to [GSNP] and to grant a license to practice and utilize TSI's technology, inventions, trademarks, and know-how, consistent with the terms and conditions set forth in this agreement."

44. Under the Agreement, paragraph 1.3, "Products shall mean any products containing Ingredient as identified in Appendix B." Appendix B of the Agreement specifies the manner in which GSNP is required to distribute products containing ATP. These products include Dietary Supplements including beverage mixes, ready to drink (RTD) beverages, and liquid dietary supplements throughout the United States and globally, by way of direct consumer sales, specialty markets, multi-level

marketing, mass marketing, membership clubs and in gyms, health food outlets and running stores.

45. GSNP was granted under the terms of the non-exclusive license as stated in the Agreement, paragraph 2, the right "to (a) use, sell and otherwise commercialize Products." Under this Agreement, GSNP was required to exclusively purchase ATP from TSI for use in formulations containing ATP that were covered by any of the claims of any of the patents in Appendix A of the Agreement.

46. GSNP has in the past formulated products ("Accused Products") which contain the Ingredient, ATP, the use of which by end users infringe the claims of patents in Appendix A, and upon information and belief, continue to do so.

47. In an email communication with TSI President Larry Kolb on or about October 7, 2010, GSNP President Brian Rubach acknowledged that he understood that he and any third parties desiring to sell the Accused Products containing ATP would be required to license the patents from TSI and purchase TSI's PEAK ATP product.

48. In 2007, GSNP purchased 1 kilogram of PEAK ATP from TSI. In 2008, GSNP purchased 1 kilogram of PEAK ATP from TSI. In 2009, GSNP purchased 2kg PEAK ATP from TSI. In 2010, GSNP purchased 69kg PEAK ATP from TSI. In 2011, GSNP purchased 163kg PEAK ATP from TSI.

49. On August 22, 2011, GSNP advised TSI that "funds were tight," and that they would remit payment on past due invoices shortly.

50. In 2012, GSNP did not purchase any PEAK ATP from TSI. At this point, TSI assumed that GSNP was no longer including ATP in its formulations.

51. In March of 2012, TSI's final invoice for $17,500 from July 2011 became current following installment payments from September 2011 through March of 2012.

52. On October 29, 2012, TSI became aware that GSNP was still producing Accused Products when Cheryl Powers of GSNP emailed TSI soliciting "a non-GMO statement or certification for the following ingredients: ATP."

53. Upon information and belief, GSNP has been and is knowingly buying and/or manufacturing and/or offering for sale and/or importing ATP and including it in Accused Products which it sells to third parties for resale to end-users/consumers.

54. By way of example and in no way as a limitation, upon information and belief, Third Party Defendant Apex Energetics, Inc. ("Apex") and others purchased, and upon information and belief continue to purchase Accused Products from GSNP.

55. The sale of these non-licensed ATP-containing Accused Products to Apex and others constitutes a material breach of contract under the Agreement.

56. As a result of GSNP's breach of the Agreement, TSI has sustained and will continue to sustain damages.

## SECOND COUNTERCLAIM
### (Contributory Patent Infringement under 35 U.S.C. § 271(c))

57. TSI realleges and incorporates by reference each and every allegation set forth in paragraphs 37 through 56.

58. GSNP has had direct, firsthand knowledge of the TSI Patents, including U.S. Patent 7,629,329 issued on December 8, 2009 to Steve S. Lee et al. for "Method for Increasing Muscle Mass and Strength Through Administration of Adenosine Triphosphate," U.S. Patent 7,671,038 entitled "Method of Therapeautic Treatments Including Human Immunodeficiency Virus (HIV) Disease and Other Conditions in a Human Host by Administering Adenine Nucleotides" issued on March 2, 2010, and U.S. Patent 6,723,737 for "Methods, Pharmaceutical and Therapeutic Compositions for Administering Adenosine," issued on April 20, 2004.

59. Despite this knowledge, GSNP has, and upon information and belief continues to formulate Accused Products. The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by the GSNP to third party resellers include ATP, that by virtue of their inclusion in the products and the manner in which they are consumed, infringe one or more claims of one or more of the TSI Patents.

60. The Accused Products were and are sold by third parties to end-users with labels and advertising explaining the elements and essential elements of one or more of the methods disclosed in the TSI Patents, and those labels and advertising statements encourage, urge, and induce the Accused Products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods. GSNP is aware of this labeling.

61. End-users of GSNP's Accused Products have taken, used, and orally administered the ATP-containing Accused Products.

62. The third party resellers and end-users of GSNP's Accused Products are direct infringers of one or more of the TSI Patents.

63. When end-users of the Accused Products consume the Accused Products, they are practicing the methods disclosed in those claims and are therefore direct infringers. GSNP has knowledge of the fact that the Accused Products, particularly as administered, were used to infringe on one or more claims of the TSI Patents.

64. When third party resellers provide Accused Products to end-users, they are practicing the methods disclosed in those claims and are therefore direct infringers. GSNP has knowledge of the fact that the Accused Products, particularly as administered, were and are used to infringe on one or more claims of the TSI Patents.

65. GSNP knowingly and willfully designed and formulated the Accused Products so as to only be capable of infringing use in the United States.

66. GSNP is aware that the third party distribution of the Accused Products for oral administration directly infringe the TSI Patents, yet has willfully and actively encouraged distribution of the Accused Products to end-users. GSNP has therefore specifically intended to cause these end-users to directly infringe the claimed methods of these patents, and have in fact urged them to do so.

67. For example and without limitation, GSNP has had knowledge of the '038 patent since at least October 3 2007. Beginning on October 2, 2007, Brian Rubach, President of GSNP and Dr. Eliezer Rapaport had an exchange of confidential

information regarding the effects of ATP in particular formulations. On or about this time, GSNP President Brian Rubach became aware of the existence of the TSI Patents as a product of this communication.

68. On or about June 24, 2009, TSI and GSNP entered into the Agreement discussed herein, which included the '737 and '329 patents in Appendix A.

69. GSNP was also put on notice of TSI's interest in the '329 and '038 patents as of December 13, 2012, when TSI's counsel sent a letter to GSNP advising them of their infringement.

70. GSNP has brazenly and willfully decided to intentionally contribute to the infringement of the TSI Patents despite knowledge of the patents' existence and their knowledge of the Accused Products' infringements of the patents.

71. At a minimum, and in the alternative, GSNP willfully blinded themselves to the infringing nature of the Accused Products' sales.

72. GSNP has not ceased their contribution to the of infringements by end-users, despite their knowledge of the TSI Patents and their infringing activities with respect to the TSI Patents.

73. As a result of GSNP's contributory infringement of the TSI Patents, TSI has suffered damages and will continue to do so.

## THIRD COUNTERCLAIM

### (Inducement of Patent Infringement under 35 U.S.C. § 271(b))

74. TSI realleges and incorporates by reference each and every allegation set forth in paragraphs 37 through 73.

75. GSNP has had direct, firsthand knowledge of the TSI Patents, including U.S. Patent 7,629,329 issued on December 8, 2009 to Steve S. Lee et al. for "Method for Increasing Muscle Mass and Strength Through Administration of Adenosine Triphosphate," U.S. Patent 7,671,038 entitled "Method of Therapeautic Treatments Including Human Immunodeficiency Virus (HIV) Disease and Other Conditions in a Human Host by Administering Adenine Nucleotides" (issued on March 2, 2010), and

U.S. Patent 6,723,737 for "Methods, Pharmaceutical and Therapeutic Compositions for Administering Adenosine," issued on April 20, 2004.

76. For example and without limitation, GSNP has had knowledge of the '038 patent since at least October 3 2007. Beginning on October 2, 2007, Brian Rubach, President of GSNP and Dr. Eliezer Rapaport had an exchange of confidential information regarding the effects of ATP in particular formulations. On or about this time, GSNP President Brian Rubach became aware of the existence of the TSI Patents as a product of this communication.

77. On or about June 24, 2009, TSI and GSNP entered into the Agreement discussed herein, which included the '737 and '329 patents in Appendix A.

78. GSNP was also put on notice of TSI's interest in the '329 and '038 patents as of December 13, 2012, when TSI's counsel sent a letter to GSNP advising them of their infringement.

79. Despite this knowledge, GSNP has, and upon information and belief continues to formulate Accused Products to induce infringement of the TSI Patents. The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by the GSNP to third party resellers include ATP, that by virtue of their inclusion in the products and the manner in which they are consumed, infringe one or more claims of one or more of the TSI Patents.

80. The Accused Products were and are sold by third parties to end-users with labels and advertising explaining the elements and essential elements of one or more of the methods disclosed in the TSI Patents, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods. GSNP is aware of this labeling.

81. End-users of GSNP's Accused Products have taken, used, and orally administered the ATP-containing Accused Products.

82. End-users of GSNP's Accused Products are direct infringers of one or more of the TSI Patents.

83. When end-users of the Accused Products orally administer the Accused Products, they are practicing the methods disclosed in those claims and are therefore direct infringers. GSNP has knowledge of the fact that the Accused Products, particularly as administered, were used to infringe on one or more claims of the TSI Patents.

84. GSNP is aware that the third party distribution of the Accused Products for oral administration directly infringe the TSI Patents, yet has willfully and actively encouraged distribution of the Accused Products to end-users.

85. GSNP knowingly and willfully designed and formulated the Accused Products so as to only be capable of infringing use in the United States.

86. GSNP has therefore specifically intended to cause these end-users to directly infringe the claimed methods of these patents, and have in fact urged them to do so.

87. GSNP has brazenly and willfully decided to intentionally induce the infringement the TSI Patents despite knowledge of the patents' existence and their knowledge of the Accused Products' infringements of the patents.

88. At a minimum, and in the alternative, GSNP willfully blinded themselves to the infringing nature of the Accused Products' sales.

89. GSNP has not ceased their inducements of infringements by end-users, despite their knowledge of the TSI Patents and their infringing activities with respect to the TSI Patents.

90. As a result of GSNP's inducement of infringement of the TSI Patents, TSI has suffered damages and will continue to do so.

## **PRAYER FOR RELIEF**

TSI Health Services, Inc. respectfully prays that the Court enter judgment as follows:

A. Enter judgment for TSI and against GSNP on GSNP's complaint;

B. Enter judgment that GSNP has breached the Agreement with TSI;

C. Enter judgment that GSNP has infringed the TSI Patents in violation of 35 U.S.C. § 271 (b), and/or (c);

D. Enter orders enjoining GSNP, and its respective officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of the foregoing, who receive actual notice of the orders by personal service or otherwise, from infringing the TSI Patents in violation of 35 U.S.C. § 271(a) (b), and/or (c);

E. To award TSI its respective damages in amounts sufficient to compensate it for GSNP's infringement of the TSI Patents, together with pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

F. To declare this case to be "exceptional" under 35 U.S.C. § 285 and to award TSI its attorney's fees, expenses, and costs incurred in this action;

G. To declare GSNP's infringement to be willful and award TSI treble damages; and

H. To award TSI such other and further relief as this Court deems just and proper.

# THIRD PARTY COMPLAINT AGAINST DEFENDANT APEX ENERGETICS, INC.

TSI hereby alleges as follows for its Third Party Complaint against Third Party Defendant Apex Energetics, Inc. ("Apex"):

## NATURE OF THIS ACTION

91. TSI (USA) Inc. f/k/a TSI Health Sciences, Inc. (hereafter "TSI") is a Montana corporation with a principal place of business at 305 S. 4th St. East, Missoula, Montana.

/ / /

92. TSI is informed and believes that Apex Energetics, Inc. is a California corporation with its principal place of business at 16592 Hale Ave., Irvine, CA 92606.

## JURISDICTION AND VENUE

93. This patent infringement action arises under the patent laws of the United States, Title 35 of the U.S. Code, section 1, *et seq*.

94. This Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

95. This Court has personal jurisdiction over Apex because Apex is a California corporation and the infringement occurred in California.

96. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c).

## NATURE OF THIS ACTION

97. This is an action for patent infringement against Apex Energetics, Inc. for patent infringement, as well as contributing and inducing the infringement of others by through use of ATP-containing formulations which infringe TSI's Patents, including U.S. Patent 7,629,329 issued on December 8, 2009 to Steve S. Lee et al. for "Method for Increasing Muscle Mass and Strength Through Administration of Adenosine Triphosphate," U.S. Patent 7,671,038 entitled "Method of Therapeautic Treatments Including Human Immunodeficiency Virus (HIV) Disease and Other Conditions in a Human Host by Administering Adenine Nucleotides" (issued on March 2, 2010), and U.S. Patent 6,723,737 for "Methods, Pharmaceutical and Therapeutic Compositions for Administering Adenosine," issued on April 20, 2004.

## FIRST CLAIM FOR RELIEF
## AGAINST THIRD PARTY DEFENDANT APEX
### (Patent Infringement Under 35 U.S.C. § 271(a))

98. TSI realleges and incorporates by reference each and every allegation set forth in paragraphs 37 through 97.

/ / /

99. Apex has, and upon information and belief continues, to purchase liquid nutraceutical formulations containing ATP (the "Accused Products") from GSNP for resale to end-users.

100. Apex distributes Accused Products to other retailers and/or directly sells these Accused Products to end-users for oral administration.

101. An true and correct copy of a screenshot showing of an example Accused Product sold by Apex call "Apex Energetics Nitric Balance K-62" is attached hereto as Exhibit "F".

102. The administration and distribution of the Accused Products by Apex to end-users for oral consumption constitutes infringement of at least one element of at least one of the claims of the TSI Patents.

103. As a result of Apex's infringement of the TSI Patents, TSI has suffered damages and will continue to do so.

## SECOND CLAIM FOR RELIEF
## AGAINST THIRD PARTY DEFENDANT APEX
## (Contributory Patent Infringement under 35 U.S.C. § 271(c))

104. TSI realleges and incorporates by reference each and every allegation set forth in paragraphs 37 through 103.

105. On or about June 16, 2011, TSI attempted to have Apex sign a licensing agreement for the purchase and distribution of Accused Products, which Apex refused. Following TSI's attempt to engage in a licensing agreement Apex by way of GSNP, Apex has direct, firsthand knowledge of the '737 and '329 Patents.

106. Upon information and belief, Apex is, and has been aware of the '038 patent.

107. The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Apex to end users who infringe one or more claims of one or more of the TSI Patents.

///

108. The Accused Products were and are sold to end-users with labels and advertising explaining the elements and essential elements of one or more of the methods disclosed in the TSI Patents, and those labels and advertising statements encourage, urge, and induce the end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

109. When end-users orally administer the Accused Products, they are practicing the methods disclosed in those claims and are therefore direct infringers. Apex has knowledge of the fact that the Accused Products, particularly as administered, were and are used to infringe on one or more claims of the TSI Patents.

110. Apex has brazenly and willfully decided to intentionally contribute to the infringement of the TSI Patents despite knowledge of the patents' existence and their knowledge of the Accused Products' infringements of the patents.

111. At a minimum, and in the alternative, Apex willfully blinded themselves to the infringing nature of the Accused Products' sales.

112. Apex has not ceased their contribution to the infringements by end-users, despite their knowledge of the TSI Patents and their infringing activities with respect to the TSI Patents.

113. As a result of Apex's contributory infringement of the TSI Patents, TSI has suffered damages and will continue to do so.

## THIRD CLAIM FOR RELIEF
## AGAINST THIRD PARTY DEFENDANT APEX
### (Inducement of Patent Infringement under 35 U.S.C. § 271(b))

114. TSI realleges and incorporates by reference each and every allegation set forth in paragraphs 37 through 113.

115. Following TSI's attempt to engage in a licensing agreement Apex by way of GSNP, Apex has direct, firsthand knowledge of the '737 and '329 Patents.

116. Upon information and belief, Apex is, and has been aware of the '038 patent.

117. The Accused Products were and are sold by Apex with labels and advertising explaining the elements and essential elements of one or more of the methods disclosed in the TSI Patents, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

118. End-users have taken, used, and orally administered the ATP-containing Accused Products.

119. End-users of the Accused Products are direct infringers of one or more of the TSI Patents.

120. Apex has knowledge of the fact that the Accused Products, particularly as administered, were and are used to infringe on one or more claims of the TSI Patents.

121. Apex is aware that the distribution of the Accused Products for oral administration directly infringes the TSI Patents, yet has willfully and actively distributed the Accused Products to end-users.

122. Apex has specifically intended to cause the end-users to directly infringe the claimed methods of these patents, and have in fact urged them to do so.

123. Apex has brazenly and willfully decided to intentionally induce the infringement the TSI Patents despite knowledge of the patents' existence and their knowledge of the Accused Products' infringements of the patents.

124. At a minimum, and in the alternative, Apex willfully blinded themselves to the infringing nature of the Accused Products' sales.

125. Apex has not ceased their inducements of infringements by end-users, despite their knowledge of the TSI Patents and their infringing activities with respect to the TSI Patents.

126. As a result of Apex's inducement of infringement of the TSI Patents, TSI has suffered damages and will continue to do so.

/ / /

## **PRAYER FOR RELIEF**

TSI Health Services, Inc. respectfully requests that this Court:

A. Enter judgment that Apex has infringed the TSI Patents in violation of 35 U.S.C. § 271(a), (b), and/or (c);

B. Enter orders enjoining Apex, and its respective officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of the foregoing, who receive actual notice of the orders by personal service or otherwise, from infringing the TSI Patents in violation of 35 U.S.C. § 271(a) (b), and/or (c);

C. To award TSI its respective damages in amounts sufficient to compensate it for Apex's infringement of the TSI Patents, together with pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

D. To declare this case to be "exceptional" under 35 U.S.C. § 285 and to award TSI its attorney's fees, expenses, and costs incurred in this action;

E. To declare GSNP's infringement to be willful and award TSI treble damages; and

F. To award TSI such other and further relief as this Court deems just and proper.

Dated: April 9, 2013

JACZKO LAW GROUP APC

DAVIS, BROWN, KOEHN, SHORS & ROBERTS. PC

By: \_\_\_\_/s/ J. Christopher Jaczko\_\_\_\_
J. Christopher Jaczko

Attorneys for Defendant, Counterclaimant and Third-Party Plaintiff
TSI HEALTH SCIENCES. INC.

## **DEMAND FOR JURY TRIAL**

TSI Health Sciences, Inc. hereby demands a trial by jury on all issues so triable.

Dated: April 9, 2013

JACZKO LAW GROUP APC

DAVIS, BROWN, KOEHN, SHORS & ROBERTS. PC

By: /s/ J. Christopher Jaczko
J. Christopher Jaczko

Attorneys for Defendant, Counterclaimant and Third-Party Plaintiff
TSI HEALTH SCIENCES. INC.

Document2